452 P.2d 1010 (1969)
The KEARNEY INVESTMENT CORPORATION, a Colorado corporation, Norbert E. Simpson, and C. C. Propps, Jr., Plaintiffs in Error,
v.
CAPITOL FEDERAL SAVINGS AND LOAN ASSOCIATION OF DENVER, Commerce Motor Hotel Corporation, and Raymond L. Payne, Sr., and Jack M. Winton, Defendants in Error.
No. 21949.
Supreme Court of Colorado, In Department.
April 21, 1969.
*1011 Law, Nagel & Clark, Ralph M. Clark, John M. Law, Denver, for plaintiffs in error.
Harry M. Williams, Denver, for defendants in error Capitol Federal Savings and Loan Assn. of Denver and Jack M. Winton.
Ireland, Stapleton, Pryor & Holmes, Clarence L. Ireland, Wilbur M. Pryor, Jr., D. Monte Pascoe, Denver, for defendants in error Commerce Motor Hotel Corp. and Raymond L. Payne, Sr.
LEE, Justice.
Plaintiffs in error, The Kearney Investment Corporation, Norbert E. Simpson, and C. C. Propps, Jr., were defendants in the trial court. They are herein referred to as "Kearney," "Simpson," and "Propps," or as "defendants."
Defendants in error, Capitol Federal Savings and Loan Association of Denver, Commerce Motor Hotel Corporation, Raymond L. Payne, Sr., and Jack M. Winton, were plaintiffs below and are herein referred to as "Capitol," "Commerce," "Payne," and "Winton," or as "plaintiffs."
Plaintiffs in error seek to reverse and set aside the adverse judgment of the trial court in upholding the right of defendants in error to foreclose a deed of trust, to have a receiver appointed, and to terminate a ground lease. They contend there were no substantial defaults in the performance of their obligations under the promissory note, deed of trust and lease to justify the foreclosure, receivership proceedings, and the termination of the lease.
Plaintiffs in error specify as error for reversal that the findings of fact and conclusions of law entered by the trial court were manifestly contrary to the evidence, and that there was insufficient competent evidence to fairly support the judgment.
A review of the factual background is necessary to an understanding of the controversy between the parties. Commerce as the fee owner of an unimproved tract of land at 4755 Vasquez Boulevard, Denver, Colorado, on March 6, 1961, entered into a 99-year lease with Kearney. Kearney then constructed a large motel complex on the property which was known as the Premier Motor Hotel and which opened for business in July of 1961. Simpson and Propps were the principal officers of The Kearney Investment Corporation. Simpson was the principal contractor for the construction of the motel and, in addition to supervising the construction, both he and Propps, a carpenter by trade, personally contributed substantial labor and services to the enterprise. Simpson invested approximately $8,000 in cash toward the construction costs and took his contractor's fee of approximately $50,000 in capital stock of The Kearney Investment Corporation. Propps contributed approximately $28,000 toward the costs of construction and the initial operation of the motel. In addition, both Simpson and Propps contributed time and services to Kearney in the management and operation of the motel from the time it was opened until the foreclosure proceedings.
The 99-year ground lease provided for the annual rent payments, in advance, of $12,000 commencing June 6, 1961. The lease further required, as additional rental, payment of all general and special taxes, assessments and water or other charges "levied, charged, assessed or imposed on or on account of the land." The lease granted Kearney an option to purchase the land for $200,000, exercisable on ninety days notice.
*1012 The permanent loan on the motel was obtained from Capitol in the initial amount of $341,000 for which a promissory note was executed on December 15, 1961, by Kearney, Simpson and Propps. This indebtedness was secured by a deed of trust in favor of Capitol, executed by Commerce and Kearney who were designated therein as "landlord" and "tenant borrower," respectively. Commerce as the fee owner subordinated its equity in the property to the lien of Capitol under the deed of trust. Pursuant to a Loan Modification Agreement on March 27, 1963, an additional advance was made by Capitol, thereby raising the indebtedness owing to Capitol to $402,000.
The trust deed, in paragraph 1, required Kearney to pay into a reserve fund, concurrently with the monthly payments, one-twelfth of the annual insurance premiums, the annual taxes, and the annual ground rents under the lease. Capitol would pay out of the reserve account the insurance premiums, taxes and rents as they became due and payable. The trust deed, in paragraph 3 of the tenant borrower's obligations, required Kearney to "* * * pay promptly all taxes, assessments, levies, water rents, insurance premiums and all other liabilities, obligations and encumbrances as they come due."
Monthly payments of principal and interest were $3,544. The total monthly payment, including principal, interest, rent, insurance premiums and taxes, was $5,887, all of which was due on the fifth of each month.
The note and deed of trust each contained an acceleration clause which provided that if default occurred and continued for a period in excess of thirty days, then Capitol could "declare all the remainder of said debt due and collectible."
The record showed that prior to June 6, 1964, very few payments had been made on the fifth of the month when due. Capitol would sometimes assess "late charges" as provided in the note. On June 6, 1964, only $10,000 of the annual $12,000 rent due at that time was paid to Commerce, there being a shortage in the reserve account. A $1,000 payment was made later in the summer, leaving a delinquent rent balance of $1,000 which was never paid to Commerce by Kearney. The loan account was delinquent on June 30, 1964, by $6,506.97, and on July 5, 1964, by $12,951.43. Notice of the delinquency was given Kearney by letter advising that if it were not paid within ten days appropriate action would be taken.
On August 5 Kearney reduced the delinquency to $10,008.43. Capitol and Kearney then agreed in writing that Kearney would pay an additional $7,065 by August 31 (thus reducing the delinquency to $2,943 which was equal to one-half month's payment) and Capitol would allow Kearney ninety days within which to pay the one-half month's delinquency. Kearney paid the $7,065 on August 31, but thereafter failed to pay the payments due on September 5 and October 5. The delinquency on October 6, 1964, was $14,717.43.
In addition, the record showed that as of October 6 Kearney was delinquent in the payment of various taxes, city, state and federal, in the sum of approximately $4,400. Kearney also owed unpaid water rents, and past due business obligations, some of which had been reduced to judgments and liens, in the approximate amount of $87,000.
There was considerable testimony in the record relating to failure of Simpson and Propps as agents of Kearney to maintain the motel premises, which Capitol contended resulted in unnecessary deterioration and waste.
On October 9, 1964, Capitol gave Notice of Election and Demand for Sale to the Public Trustee, and on the same date applied to the district court of Denver County for appointment of a receiver. The court appointed Jack M. Winton, who was a vice president of Capitol, as receiver. Some six weeks later Commerce served a series of notices on Kearney to terminate and cancel the 99-year lease, which specified *1013 as reasons therefor the failure to pay rents, failure to pay taxes and to deliver receipts therefor, default in payment of indebtedness due Capitol, failure to keep the premises in good repair, filing of mechanics' liens, and failure to furnish evidence of public liability insurance, all in accordance with the terms of the lease.
It is here noted that the trust deed provided that Commerce as "landlord" had "thirty days after the termination of the lease or thirty days after receipt of written notice of any default" under the promissory note and trust deed within which to either, first, assume the liability of Kearney under the note and deed of trust, in which case an additional thirty days was granted to cure the default; or, second, thirty days in which to purchase the entire interest of Capitol in the note and security. Pursuant to this provision, and in order to protect its substantial interest in the property, Commerce assumed the obligations of Kearney and arranged to cure the default. Raymond L. Payne, Sr., who was president and majority stockholder of Commerce, was then appointed receiver succeeding Winton. At the time of trial, Commerce had paid Capitol $51,216 on the note and trust deed, and the further amount of $18,000 in other obligations.
By agreement of the parties the case was tried to the court in two separate hearings.
The first portion of the trial related to the issue of whether there was a default under the terms of the note and deed of trust. At the end of a six-day trial, the court found on this issue as follows:
"It is clear from a preponderance of the evidence before the Court that the loan involved in this litigation was in default for failure of the defendants to make the payment due in the month of September, 1964. The note provides for payments to be made on the fifth of each and every month. Nothing before the Court has the effect of changing that date. It is also clear, as I see the testimony, that there was an agreement and understanding between Capitol and the defendants that Capitol would accept payments due on the fifth of each month during the rest of the month after the fifth, provided the entire amount of the payment due on the fifth was made by the last day of the month, and late charges would not be made. This is the forbearance, as I understand it, and the full extent of it.

"The note provides for payment on the fifth. If payment was not made by the end of the month, the default dates back to the fifth and not to the end of the month as Counsel for Defendants claim. They are asking the Court to hold here that they had an additional thirty days besides the thirty days mentioned in the note. * * *
"The letters of July 28th referring to the indebtedness due under the delinquency present at that time and the fact that if payments were not brought up to date within a certain number of days some legal action would be taken I think are significant here and have a distinct bearing on what Capitol at least thought the agreement was between the parties as to the date when these payments were due, and that has never been changed since the first day of the mortgage.
"The evidence is also clear that the defendants have violated two provisions of the trust deed: paragraph 3 [taxes, assessments, levies, etc.] and paragraph 4 [waste] * * *.
"In the brief the Court finds that the foreclosure was justified; that the appointment of a receiver is proper and appropriate and lawful, and that the issues which have been tried before the Court this week are found in favor of Capitol and against the defendants." (Emphasis added.)
The second portion of the trial, which lasted two days, concerned the issue of whether there was a breach of the terms *1014 and conditions of the ground lease which would permit termination and cancellation. The court, at the conclusion of the evidence relating to this issue, found as follows:
"The preponderance of the evidence before the Court at this hearing shows, and I so find, that the tenant of the lease involved here, the Kearney Investment Corporation, has violated the terms and conditions of the lease substantially as set forth in the notices of the landlord to elect to terminate the lease. I further find that those notices were properly served upon the tenant as provided for in the lease. The landlord, therefore, had a right to declare the lease terminated, and the termination which has been made is proper and justified. * * *"
Defendants' motion for a new trial was denied.
The main argument is directed to the effect of the "forbearance agreement." Essentially, Kearney contends that by verbal agreement the parties understood that the due date of the payments was changed from the fifth of each month to the last day of each month; that, as a result of this change in the payment date, the thirty-day period in which the obligor was permitted to cure any default under the terms of the promissory note ran from the end of the month, rather than from the fifth of the month; and that, therefore, Capitol's commencement of the foreclosure on October 9, 1964, was premature, the thirty-day period not expiring until November 30, 1964.
The evidence relating to the forbearance agreement was highly in conflict. The court resolved it against Kearney. No useful purpose would be served to point out the many areas of disputed testimony in relation to each of plaintiffs in error's contentions, all of which attack the court's findings. Where, as here, the evidence is highly conflicting, it becomes only necessary for this court to determine whether there is sufficient competent evidence to support the judgment, even though reasonable men might draw different inferences and reach different conclusions therefrom. Gosch v. Estate of Gomez, Colo., 450 P.2d 1016; Sibcy v. Amerine, 164 Colo. ___, 432 P.2d 391; Ridgeway v. Pope, 163 Colo. 160, 430 P.2d 77; Barnett v. Miller, 163 Colo. 201, 429 P.2d 263.
Kearney further argues that the result of the court's decision is an inequitable and unjust enrichment of Commerce at the expense of Kearney. With this we do not agree. In the first instance, Commerce subordinated its $200,000 tract of land to Capitol's deed of trust at the request of Kearney to make the motel enterprise feasible. Commerce had no control over the motel management and in no way contributed to its unsuccessful operation. In order to save its equity, as heretofore pointed out, Commerce had to cure Kearney's default by paying Capitol $51,216 to bring the obligation current, in addition to assuming the balance of the indebtedness and satisfying the creditors of the motel.
The record amply supports the court's findings of fact and conclusions of law as to both the issue of default and the issue of termination and cancellation of the lease.
The judgment is affirmed.
PRINGLE, HODGES and GROVES, JJ., concur.